# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| EDMOND KHUDYAN<br><br>Petitioner,<br><br>-against-<br><br>REPUBLIC OF ARMENIA<br><br>Respondent. | Civil Action No. 1:24-cv-1054 |

### DECLARATION OF ALEXANDER BEDROSYAN IN SUPPORT OF PETITIONER'S PETITION TO RECOGNIZE ARBITRATION AWARD PURSUANT TO 22 U.S.C. § 1650A

I, Alexander Bedrosyan, pursuant to 28 U.S.C. § 1746, hereby declare:

1. I am an associate at Lewis Baach Kaufmann Middlemiss PLLC, attorney for Petitioner Edmond Khudyan. I am admitted to practice in the U.S. District Court for the District of Columbia.

2. I make this declaration for the purpose of securing the entry of judgment in this District in favor of Petitioner against Respondent the Republic of Armenia ("Armenia") of the US$ 438,393.84 pecuniary obligation established in a final and binding Annulment Decision issued on July 21, 2023 under the rules of the International Centre for Settlement of Investment Dispute ("ICSID") in ICSID Case No. ARB/17/36. I represented Mr. Khudyan during the underlying arbitration proceeding and annulment proceeding that led to the Annulment Decision and as such have personal knowledge of the statements made and events which transpired in these proceedings and which are set forth below.

3. Submitted herewith as <u>Exhibit 1</u> is a copy of the Annulment Decision certified by the Secretary-General of ICSID.

4. The ICSID Convention does not provide any applicable remedies against an annulment decision.

5. Mr. Khudyan and a co-claimant, Arin Capital & Investment Corp., commenced arbitration against Armenia in September 2017. On December 15, 2021, the tribunal issued an award declining jurisdiction over the claimants' claims and ordering them to pay a portion of Armenia's costs.

6. On April 8, 2022, Mr. Khudyan began the Annulment Proceeding, seeking to annul the jurisdictional finding against him and the resulting costs order against both claimants.

7. The first step in the Annulment Proceeding was the question of whether enforcement of the costs order against Mr. Khudyan and his co-claimant should be stayed pending the outcome of the Annulment Proceeding. Mr. Khudyan argued that enforcement must be stayed, because if Armenia successfully enforced the cost order but then the cost order were annulled, it would be virtually impossible to recoup the money from Armenia. To oppose this argument, Armenia twice took the position that it would comply with any order by the Annulment Committee to pay or return money to Mr. Khudyan.

   a. In a brief filed on August 17, 2022, Armenia wrote: "Assuming that the Republic enforces the Award, and assuming that Mr. Khudyan is successful in his annulment application, the *ad hoc* Committee could order that the whole or part of the enforcement amount be returned to Mr. Khudyan. The Republic complies with the judgments, orders, and decisions of international courts and tribunals."

   b. In a brief filed on September 6, 2022, Armenia wrote: "It is a matter of trite law that ICSID '[c]ontracting parties are always assumed to be acting honestly and

in good faith.' The obligation to comply with an ICSID award is a treaty obligation owed by the Republic by application of Article 53 of the ICSID Convention. As states are presumed to act in good faith, the Republic is a beneficiary of a presumption that it will in fact comply with its treaty obligations and not violate the principle of *pacta sunt servanda* over a $737,466.34 award." (The $737,466.34 figure was the original costs order.)

8. Based on this undertaking, the Annulment Committee partially accepted Armenia's position, and ordered Mr. Khudyan to put the amount of the costs order into escrow as a condition for staying enforcement. Ex. 1 ¶¶ 25, 30-31. Mr. Khudyan did so.

9. After two rounds of briefing and an oral hearing on the annulment application, the Annulment Committee annulled the tribunal's citizenship finding against Mr. Khudyan, and the costs order in its entirety. The Committee itself issued a fresh costs order for the costs of the Annulment Proceeding. It ordered Armenia to reimburse Mr. Khudyan for his costs incurred in the Annulment Proceeding. It also ordered that the funds Mr. Khudyan had deposited into escrow be returned to him. The *dispositif* of the Annulment Decision reads:

> For the reasons set forth above, the *ad hoc* Committee unanimously DECIDES as follows:
> (1) Paragraphs 203-267 and 452(1), (4) insofar as it concerns the Applicant, and (5) of the Award are hereby annulled;
> (2) The funds held in escrow in accordance with the Committee's decision on the Applicant's Stay Request, together with all interest incurred thereon, are to be paid to Mr. Khudyan; and
> (3) The Respondent shall pay to the Applicant the following sums:
> > (a) USD 288,465.57 in respect of the fees and costs of the Committee and ICSID; and
> > (b) USD 149,928.27 in respect of counsel's fees and other costs.

Ex. 1 ¶ 259.

3

10. Over the next few months, counsel for Mr. Khudyan worked to secure the release of the funds from escrow. Arbitration Counsel for Armenia, Mr. Teddy Baldwin, delayed providing clear confirmation to the escrow agent, Ms. Sally Rowshan, that the funds should be released. Therefore, on October 17, 2023, Ms. Rowshan wrote to Mr. Baldwin:

> The purpose of this escrow is not to hold funds indefinitely. [Counsel for Mr. Khudyan] firmly believes that we are required to release the funds to his client. We do not want to be in the middle of a dispute, and I would really appreciate it if you could please coordinate with opposing counsel and give us clear direction.
>
> [Counsel for Mr. Khudyan] spent a lot of time with emails, letters, and documentation as to why he believes we must release the funds. I would appreciate a more elaborate explanation as to why we must continue to hold funds and most significant, clarification as to when you expect there to be a disposition in this matter.

11. Following a one-sentence response from Mr. Baldwin ten days later, Ms. Rowshan replied the same day:

> Mr. Baldwin,
>
> Your email does not make clear whether or not there is an objection to my releasing the money. The fact that your client has not filed an objection or made a formal objection is something I already knew.
>
> Your email is vague and does not answer my simple question which is whether or not you and your client object to me releasing the funds. If so, I will wait and allow time for the attorneys to resolve this. If you do not have an objection, please let me know so that I can relieve myself and my company of this escrow.
>
> The intention of accepting this escrow was never to hold on to the funds indefinitely. Please let me know if you and your client have any objection, if you intend on filing an objection, and if not, I kindly ask that you let me know so I can conclude my obligations under this escrow.

12. After no further response from Mr. Baldwin, the escrow agent eventually released the funds to Mr. Khudyan on November 2, 2023.

13. Attached herewith as <u>Exhibit 2</u> is correspondence between Ms. Rowshan and Mr. Baldwin, arbitration counsel for Armenia.

14. However, Armenia has not made the US$ 438,393.84 payment the Annulment Decision ordered it to make to Mr. Khudyan, despite its obligations under Article 53(1) of the ICSID Convention and its express representations to the Annulment Committee.

15. No prior application for this or similar relief has been made to this District Court.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: Washington, DC
       April 12, 2024

                                              /s/ Alexander Bedrosyan
                                              Alexander Bedrosyan