## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| EDMOND KHUDYAN<br>1625 W. Glenoaks Blvd. # 303<br>Glendale, CA 91201<br><br>　　　　　Petitioner,<br><br>　　-against-<br><br>REPUBLIC OF ARMENIA<br>Ministry of Foreign Affairs<br>Republic Square, Government House 2<br>0010 Yerevan<br>Republic of Armenia<br><br>　　　　　Respondent. | Civil Action No. 1:24-cv-1054 |

## PETITION TO RECOGNIZE ARBITRATION AWARD
## PURSUANT TO 22 U.S.C. § 1650A

Petitioner, Mr. Edmond Khudyan, by and through undesigned counsel, states as follows:

### NATURE OF ACTION

1.　　Mr. Khudyan brings this action pursuant to 22 U.S.C. § 1650a and Article 54 of the Convention on the Settlement of Investment Disputes between States and Nationals of Other States (the "ICSID Convention") for a judgment on an ICSID annulment decision in the amount of $438,393.84 issued in his favor against Armenia on July 21, 2023 ("Annulment Decision"). A certified copy of the Annulment Decision is attached as Exhibit 1 to the accompanying Declaration of Alexander Bedrosyan, dated April 12, 2024 ("Bedrosyan Decl.").

2.　　The pecuniary obligation in the Annulment Decision orders Armenia to reimburse the legal expenses and costs Mr. Khudyan incurred in the annulment proceeding (the "Annulment Proceeding"). Mr. Khudyan brought the Annulment Proceeding to annul an erroneous decision by

a tribunal in an underlying ICSID arbitration (the "Arbitration"), stating that he was an Armenian citizen and therefore could not bring a claim against Armenia under the ICSID Convention. The Annulment Committee granted Mr. Khudyan's application for annulment, finding that the tribunal's citizenship decision constituted a "manifest excess of power." Annulment Decision ¶¶ 218, 221. Between the Arbitration and the Annulment Proceeding, Armenia's Passport and Visa Department admitted in writing to Mr. Khudyan that he has never been a citizen of Armenia. *Id.* ¶ 126. While the Annulment Committee found that this admission could not be the basis for annulment as it post-dated the Arbitration, the Committee did consider it "disturbing that the organ of the respondent State most closely concerned with matters of citizenship appears to take a different view from that advanced by the respondent State in the proceeding before the Tribunal." *Id.* ¶ 177.

3. To date, Armenia has not paid any part of the Annulment Decision. This is despite the fact that Armenia twice explicitly promised the Annulment Committee that it would comply with any payment obligation to Mr. Khudyan that the Annulment Committee may order as consideration for procedural relief, which it received. *See* Bedrosyan Decl. ¶¶ 7-8. Armenia has breached this promise, and its obligations under the ICSID Convention.

## THE PARTIES

4. Petitioner Mr. Khudyan is an American citizen residing in Glendale, California.

5. Respondent Republic of Armenia is a foreign state within the meaning of the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1602 *et seq.*

6. Both the United States and Armenia are parties to the ICSID Convention.

## JURISDICTION AND VENUE

7. This Court has subject-matter jurisdiction over this action pursuant to 22 U.S.C. § 1650a. The statute provides:

> a) An award of an arbitral tribunal rendered pursuant to chapter IV of the [ICSID] convention shall create a right arising under a treaty of the United States. The pecuniary obligations imposed by such an award shall be enforced and shall be given the same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several States. The Federal Arbitration Act (9 U.S.C. 1 et seq.) shall not apply to enforcement of awards rendered pursuant to the convention.
>
> b) The district courts of the United States (including the courts enumerated in section 460 of title 28) shall have exclusive jurisdiction over actions and proceedings under subsection (a) of this section, regardless of the amount in controversy.

8. Subject-matter jurisdiction is also proper under 28 U.S.C. § 1330(a), because this action is a "nonjury civil action against a foreign state. . . [on] a claim for relief in personam with respect to which the foreign state is not entitled to immunity." The arbitration exception in the FSIA applies, since this is an action "to confirm an award made pursuant to . . . an agreement to arbitrate [and the] award is governed by a treaty or other international agreement in force for the United States calling for the recognition and enforcement of arbitral awards." 28 U.S.C. § 1605(a)(6). The Annulment Decision is governed by such a treaty – the ICSID Convention. *See Micula v. Romania*, 404 F. Supp. 3d 265, 277 (D.D.C. 2019) ("Courts consistently have held that the FSIA's arbitration exception confers subject matter jurisdiction over petitions to enforce ICSID awards." (collecting cases)); *Von Pezold v. Zimbabwe*, No. 21-cv-2004 (APM), 2023 WL 5547912, at *3 (D.D.C. Aug. 9, 2023) (same).

9. The waiver exception in the FSIA also applies. 28 U.S.C. § 1605(a)(1). By becoming party to the ICSID Convention, Armenia waived sovereign immunity from actions in other state parties to the Convention to enforce ICSID awards against it. *See Von Pezold*, 2023 WL

3

5547912, at *3 ("Courts also have held that the 'waiver exception' applies in ICSID enforcement actions." (collecting cases)).

10. This Court may exercise personal jurisdiction over Armenia pursuant to 28 U.S.C. § 1330(b).

11. Venue is proper in this District under 28 U.S.C. § 1391(f)(4).

## THE ANNULMENT DECISION

### A. Relevant Provisions of The ICSID Convention

12. Article 25 of the ICSID Convention[1] establishes the requirements for a dispute between a state and a private party to be within the arbitral jurisdiction of the Centre. Among other requirements, the private party must not be a citizen of the state and must have made an investment. Article 41 allows a disputing party to raise an objection to the arbitral tribunal's jurisdiction, and confirms, "[t]he Tribunal shall be the judge of its own competence." Article 61 empowers a tribunal to order one party to pay the costs of a proceeding, including the other party's legal fees and the fees of the arbitrators.

13. Article 52(1) allows a party to request annulment of an award on various bases, including that "the Tribunal has manifestly exceeded its powers." Under Article 52(5), an annulment committee may stay enforcement of the award pending the decision on annulment.

14. Article 53(1) provides, "Each party shall abide by and comply with the terms of the award except to the extent that enforcement shall have been stayed pursuant to the relevant provisions of this Convention." Article 53(2) defines an "award" to "include any decision interpreting, revising, or annulling such award pursuant to Articles 50, 51, or 52."

---

[1] The official text of the Convention is available at pages 4-27 of this document: https://icsid.worldbank.org/sites/default/files/documents/ICSID_Convention.pdf.

4

15. Article 54(1) provides that "[e]ach Contracting State shall recognize an award rendered pursuant to this Convention as binding and enforce the pecuniary obligations imposed by that award within its territories as if it were a final judgment of a court in that State."

16. Article 52(4) provides that Articles 41-45, 48, 49, 53, 54 and 61, *inter alia*, "shall apply *mutatis mutandis* to proceedings before the [annulment] Committee."

17. Article 52 does not provide for the annulment (or any related remedy) of an annulment decision, and in any event the applicable time limit for any such remedy (120 days) has long since passed in the case of the Annulment Decision.

18. Therefore, Armenia is obligated to comply with the pecuniary obligation in the Annulment Decision, and the United States is obligated to enforce that obligation as if it were issued by a U.S. federal court.

B. The Arbitration

19. In 2017, Mr. Khudyan and a co-claimant, the company of which he is a sole shareholder, Arin Capital & Investment Corp., initiated arbitration against Armenia, claiming that Armenia violated international law by failing to prevent the embezzlement of his investment in a real estate development. *See* Annulment Decision ¶ 45. Armenia objected to jurisdiction under Article 25 of the ICSID Convention, claiming that Mr. Khudyan was an Armenian citizen and that his co-claimant did not invest in the real estate. *Id.* ¶¶ 48-49, 68.

20. In accordance with Article 41, the tribunal ruled on these objections. It issued its award on December 15, 2021 – nearly two years after the hearing on jurisdiction and merits held from January 20-24, 2020. *Id.* at v. The tribunal upheld Armenia's jurisdictional objections and dismissed the arbitration. *Id.* ¶ 71. It ordered Mr. Khudyan and his co-claimant jointly and severally to reimburse a portion of Armenia's costs in the arbitration, but it rejected Armenia's request for interest on the costs. *Id.* ¶¶ 69-70.

5

21. In February 2022, Mr. Khudyan, through local counsel, wrote to the Head of Armenia's Passport and Visa Department asking it to confirm whether he was a citizen of Armenia, as Armenia's expert witness had argued in the arbitration. On February 23, 2022, the Head of the Passport and Visa Department responded in writing. Echoing Mr. Khudyan's arguments in the arbitration, the response confirmed that Mr. Khudyan "isn't and hasn't been a citizen of the Republic of Armenia." *Id.* ¶ 126.

### C. The Annulment Proceeding and Annulment Decision

22. On April 8, 2022, Mr. Khudyan sought annulment of the award's citizenship finding and cost order under Article 52(1)(b) of the ICSID Convention, claiming that the tribunal "manifestly exceeded its powers" by failing to exercise jurisdiction over him. *Id.* ¶¶ 7, 72. The Annulment Committee was constituted. Its President – Sir Christopher Greenwood – was a former judge of the International Court of Justice, the highest judicial body in the United Nations.

23. The parties first briefed the issue of whether enforcement of the cost order against Mr. Khudyan and his co-claimant should be stayed pending the outcome of the Annulment Proceeding. *Id.* ¶¶ 16-26. Mr. Khudyan argued that enforcement must be stayed, because if Armenia successfully enforced the cost order but then the citizenship finding and cost order were annulled, it would be virtually impossible to recoup the money from Armenia. To oppose this argument, Armenia explicitly promised – twice – that it would comply with any order by the Annulment Committee to pay or return money to Mr. Khudyan. Bedrosyan Decl. ¶¶ 7a-b. Based on this undertaking, the Annulment Committee partially accepted Armenia's argument, and ordered Mr. Khudyan to put the amount of the costs order into escrow as a condition for staying enforcement, which Mr. Khudyan did. Annulment Decision ¶¶ 25, 30-31.

24. After two rounds of briefing and an oral hearing on the annulment application, the Annulment Committee issued the Annulment Decision on July 21, 2023. It upheld Mr. Khudyan's

6

application, finding that the "starting point" of the tribunal's citizenship analysis consisted of an assumption that was never substantiated. *Id.* ¶¶ 187-217. This constituted a manifest excess of power within the meaning of Article 52(1)(b) of the ICSID Convention. *Id.* ¶¶ 218-221.

25. In terms of the admission after the Arbitration by Armenia's Passport and Visa Department that Mr. Khudyan was not an Armenian citizen, the Annulment Committee found that this admission could not reveal an annullable error by the arbitration tribunal because, as it post-dated the Arbitration, it was not part of the Arbitration record before the tribunal. *Id.* ¶¶ 176-177. Nonetheless, the Committee "consider[ed] it disturbing that the organ of the respondent State most closely concerned with matters of citizenship appears to take a different view from that advanced by the respondent State in the proceeding before the Tribunal." *Id.* ¶ 177.

26. The Committee also annulled the underlying award's cost order against Mr. Khudyan and his co-claimant. It explained that this was a necessary consequence of annulling the citizenship finding:

> That leaves the question of what to do about paragraph 452(5), in which the Tribunal ordered "the Claimants to pay the Respondent the sum of USD 337,466.34 for the expended portion of the Respondent's advances to ICSID and USD 400,000 towards the Respondent's legal fees and expenses."
>
> The Tribunal did not distinguish between the two Claimants, that is Mr Khudyan and Arin US, in making this order. Only Mr Khudyan has sought annulment and the parts of the Award in which the Tribunal held that it lacked jurisdiction *ratione materiae* in respect of the claims by Arin US remain valid and effective. Nevertheless, the Committee is not in a position to determine for itself what portion of the costs awarded by the Tribunal relate to Mr Khudyan and what part to Arin US, each of which was jointly and severally liable for the full amount awarded, as was clear from the Parties' submissions on the stay of execution. **It has therefore concluded that it must annul paragraph 452(5) in its entirety.**

*Id.* ¶¶ 244-245 (emphasis added).

27. Both Mr. Khudyan and Armenia requested the Annulment Committee to award in their favor their costs incurred in the Annulment Proceeding. *Id.* ¶¶ 246-251. Under Article 61 of the ICSID Convention, the Annulment Committee ordered Armenia to reimburse all of Mr. Khudyan's incurred costs, which amounted to $438,393.84. *Id.* ¶¶ 252-258. It also ordered that the funds that Mr. Khudyan had deposited in escrow be returned to him. *Id.* ¶ 259(2).

28. The Annulment Decision ordered the following relief:

> For the reasons set forth above, the *ad hoc* Committee unanimously DECIDES as follows:
> (1) Paragraphs 203-267 and 452(1), (4) insofar as it concerns the Applicant, and (5) of the Award are hereby annulled;
> (2) The funds held in escrow in accordance with the Committee's decision on the Applicant's Stay Request, together with all interest incurred thereon, are to be paid to Mr Khudyan; and
> (3) The Respondent shall pay to the Applicant the following sums:
>   (a) USD 288,465.57 in respect of the fees and costs of the Committee and ICSID; and
>   (b) USD 149,928.27 in respect of counsel's fees and other costs.

*Id.* ¶ 259.

29. The escrow agent eventually released the funds to Mr. Khudyan on November 2, 2023. It reprimanded arbitration counsel for Armenia for delaying the process. *See* Bedrosyan Decl. ¶ 13, Ex. 2, Correspondence between Sally Rowshan, Secured Trust Escrow, and Teddy Baldwin, Arbitration Counsel for Armenia ("The purpose of this escrow is not to hold funds indefinitely." . . . "Your email is vague and does not answer my simple question which is whether or not you and your client object to me releasing the funds.").

30. In breach of its obligation under the Annulment Decision and Article 53(1) of the ICSID Convention, and its repeated express promises to the Annulment Committee, Armenia has not yet paid Mr. Khudyan the $438,393.84 as ordered by the Annulment Committee.

8

## COUNT I FOR RECOGNITION OF ARBITRATION AWARD PURSUANT TO 22 U.S.C. § 1650A

31. Petitioner repeats and re-alleges all the foregoing paragraphs of the Petition as if fully set forth herein.

32. The Annulment Decision is a final and binding arbitral award in Petitioner's favor that was properly issued under the ICSID Convention, to which the United States and Armenia have been party at all relevant times. Armenia is obligated to comply with the Decision under Article 53(1) of the ICSID Convention, and the Decision is subject to automatic recognition and enforcement in the United States under Article 54(1) of the ICSID Convention, which is implemented in U.S. law at 22 U.S.C. § 1650a.

33. Accordingly, Petitioner Mr. Khudyan seeks an order recognizing and entering judgment on the Annulment Decision pursuant to 22 U.S.C. § 1650a, in the amount of US$438,393.84, plus applicable post-judgment interest until payment has been made in full.

## PRAYER FOR RELIEF

**WHEREFORE**, Petitioner respectfully demands entry of judgment in his favor and against Respondent as follows:

  a. Ordering that the pecuniary obligation in the Annulment Decision in favor of Petitioner against Respondent be recognized and entered as a judgment by the Clerk of this Court in the same manner and with the same force and effect as if the Annulment Decision were a final judgment of this Court, as authorized by 22 U.S.C. § 1650a and Article 54 of the ICSID Convention;

9

b. Entering judgment in favor of Petitioner against Respondent equal to US$ 438,393.84, plus applicable post-judgment interest up to the date when payment is made in full;

c. Awarding Petitioner the costs of this proceeding, and attorneys' fees as permitted by law, in an amount to be quantified; and

d. Granting Petitioner such other and further relief against Respondent as the Court deems just and proper under the circumstances.

Dated: April 12, 2024

Respectfully submitted,

/s/ Alexander S. Bedrosyan
Alexander S. Bedrosyan (D.C. Bar 1044386)
Tara J. Plochocki (D.C. Bar 989404)
LEWIS BAACH KAUFMANN MIDDLEMISS PLLC
1050 K Street NW, Suite 400
Washington, DC 20001
Tel.: (202) 659-7874; Fax: (202) 466-5738
alexander.bedrosyan@lbkmlaw.com
tara.plochocki@lbkmlaw.com
*Attorneys for Petitioner Mr. Edmond Khudyan*