**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

EDMOND KHUDYAN

          Petitioner,

   -against-                                                      Civil Action No. 1:24-cv-1054 (RBW)

REPUBLIC OF ARMENIA

         Respondent.

**PETITIONER EDMOND KHUDYAN'S REPLY IN SUPPORT OF HIS PETITION TO**
**RECOGNIZE ARBITRATION AWARD AND IN OPPOSITION TO**
**RESPONDENT'S COUNTER-PETITION**

# <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................... 1

I.    THE ANNULMENT DECISION ANNULLED THE ORIGINAL COST DECISION AS TO BOTH PETITIONER AND ARIN CAPITAL ........................................................ 2

    A.    The Annulment Decision Explicitly Annulled the Original Cost Award in its Entirety ................................................................................................... 2

        1.    Body of the Annulment Decision .............................................. 2

        2.    *Dispositif* of the Annulment Decision ....................................... 4

        3.    Respondent's Protests Against the Annulment Decision Are Incorrect and Inadmissible in This Proceeding ................................................... 5

    B.    Respondent's Conduct Confirms that Petitioner's Pecuniary Rights under the Annulment Decision Are Unencumbered. ............................................ 7

    C.    The ICSID Secretary-General Confirmed that the Original Cost Decision is Annulled. ................................................................................................ 9

II.    IN ANY EVENT, RESPONDENT CANNOT SHIFT ANY ALLEGED LIABILITY UNDER THE ORIGINAL COST DECISION TO PETITIONER ................................ 11

    A.    Respondent Has Not Confirmed the Original Cost Decision Against Arin Capital, Nor Could It Do So Before This Court. ................................................. 11

    B.    Respondent's Alter Ego Allegations Are Insufficient .......................... 14

III.    RESPONDENT'S FALSE INSINUATIONS AGAINST PETITIONER DO NOT PROVIDE A BASIS TO AVOID RECOGNITION OF THE ANNULMENT DECISION ................................................................................................................ 16

CONCLUSION ................................................................................................................ 17

INDEX OF EXHIBITS .................................................................................................... 18

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Baker by Thomas v. General Motors Corp.*,
    522 U.S. 222 (1998)......................................................................................................16

*Belize Soc. Dev. v. Belize*,
    5 F. Supp. 3d 25 (D.D.C. 2013) ................................................................................16

*Compañía de Inversiones Mercantiles, S.A. v. Grupo Cementos de Chihuahua S.A.B. de C.V.*,
    970 F.3d 1269 (10th Cir. 2020) ................................................................................13

*Conti 11. Container Schiffarts-GMBH & Co. KG M.S., MSC Flaminia v. MSC Mediterranean Shipping Co. S.A.*,
    91 F.4th 789 (5th Cir. 2024) .....................................................................................14

*Crystallex Int'l Corp. v. Bolivarian Rep. of Venezuela*,
    333 F.Supp.3d 380 (D. Del. 2018)............................................................................12

*Dist. Council No. 9 v. APC Painting, Inc.*,
    272 F.Supp.2d 229 (S.D.N.Y. 2003).........................................................................11

*Eletson Holdings, Inc. v. Levona Holdings Ltd.*,
    731 F.Supp.3d 531 (S.D.N.Y. 2024).........................................................................11

*Frontenac Intern., S.A. v. Global Marketing Systems, JLT*,
    Civil Action No. RDB–13–00122, 2012 WL 2896896 (D. Md. June 11, 2013)....................12

*Funnekotter v. Agric. Dev. Bank of Zimbabwe*,
    No. 13 Civ. 1917(CM), 2015 WL 9302560 (S.D.N.Y. Dec. 17, 2015)................................12

*Hasso v. Hapke*,
    227 Cal.App.4th 107 (2014) ......................................................................................15

*Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria*,
    937 F.2d 44 (2d Cir. 1991).........................................................................................14

*Leeward Const. Co. v. Am. Univ. of Antigua*,
    No. 12 Civ. 6280(LAK), 2013 WL 1245549 (S.D.N.Y. March 26, 2013)...........................11

*Lumber Liquidators, Inc. v. Sullivan*,
    Civil Action No. 10–11890–NMG, 2011 WL 5884252 (D. Mass. Sept. 27, 2011) ...............................................................................................................11

*Micula v. Gov't of Romania,*
    404 F. Supp. 3d 265 (D.D.C. 2019) ...................................................................6

*Mobil Cerro Negro v. Bolivarian Republic of Venezuela,*
    863 F.3d 96 (2d Cir. 2017)................................................................................6

*Orion Shipping & Trading Co. v. Eastern States Petroleum Corp.,*
    312 F.2d 299 (2d Cir. 1963)............................................................................11

*Solé Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC,*
    450 F.3d 100 (2d Cir. 2006)......................................................................13, 14

*Valores Mundiales, S.L. v. Bolivarian Republic of Venezuela, Ministerio del
    Poder Popular para Relaciones Exteriores,*
    450 F.3d 100 (2d Cir. 2006).......................................................................7, 16

**Statutes**

22 U.S.C. § 288 ...........................................................................................................14

22 U.S.C. § 1650A ...........................................................................................1, 12, 16

D.C. Code § 13-423(a)..............................................................................................13

**Other Authorities**

Ex. Ord. No. 11966, Jan. 19, 1977, 42 Fed. Reg. 4331 ...........................................14

ICSID Convention, Mar. 18, 1965, 17 U.S.T. 1270 .....................................6, 9, 10, 14

## <u>INTRODUCTION</u>

Pursuant to this Court's Minute Order of February 4, 2025, Petitioner Mr. Edmond Khudyan submits this Reply in support of his Petition to Recognize Arbitration Award Pursuant to 22 U.S.C. § 1650A (ECF No. 2-1 or "Petition"), and in opposition to Respondent's Opposition and Counterpetition (ECF No. 15 or "Opposition/Counterpetition"). Petitioner seeks to confirm and enforce Respondent's pecuniary obligation of $438,393.84 under the Annulment Decision issued on July 21, 2023 by the International Centre for Settlement of Investment Disputes ("ICSID"). *See* Annulment Decision (ECF No. 1-2). The Annulment Decision annulled in part an Award dated December 15, 2021 that had dismissed claims by Petitioner and his co-claimant Arin Capital & Investment Corp. ("Arin Capital") against Respondent. *See* Award (ECF No. 15-2). The Annulment Decision ordered Respondent to reimburse Petitioner's costs in the annulment proceeding. *See* Annulment Decision ¶¶ 252–59.

Respondent's Opposition/Counterpetition is frivolous. It is based on the cost decision from the partially annulled Award ("Original Cost Decision"). Respondent claims that the Annulment Decision annulled the Original Cost Decision only "as against [Petitioner Mr. Khudyan]," but not Arin Capital. *See* Opposition/Counterpetition ¶ 41. Respondent then "seeks to hod [sic] him liable for the Cost Decision against Arin Capital as the alter ego." *Id.* Both planks of Respondent's argument fail.

*First*, the Annulment Decision annulled the Original Cost Decision against both Petitioner and Arin Capital (Section I, *infra*). This is confirmed by: (a) the text of the Annulment Decision itself; (b) Respondent's conduct during and after the annulment proceeding; and (c) the subsequent letter from the ICSID Secretary-General to Respondent's Minister of Finance concerning the unpaid obligation in the Annulment Decision – a letter grossly mischaracterized by Respondent (Opposition/Counterpetition ¶ 49).

*Second*, even putting aside the annulled status of the Original Cost Decision, Respondent cannot interpose it against Petitioner (Section II, *infra*). Procedurally, an award creditor must confirm the arbitration award against the award debtor if it wants to shift liability to a third party via an alter ego theory. Respondent has never confirmed the Original Cost Decision against Arin Capital and does not seek to do so in this proceeding, nor would there be personal jurisdiction for it to do so anyway. Substantively, Respondent's alter ego allegations are insufficient: in fact, although Respondent's brief relies extensively on the Award, it neglects to point out to the Court that the Award ***rejected Respondent's attempt to pierce Arin Capital's corporate veil***. *See* Award ¶ 284 ("Accordingly, the Tribunal concludes that there are no grounds to, as the Respondent requests, 'pierce the corporate veil' by disregarding '[Arin Capital's] state of incorporation.'").

Therefore, Petitioner respectfully requests that the Court grant his Petition, deny Respondent's Counterpetition, and enter judgment in favor of Petitioner in the amount of $438,393.84 plus costs, attorneys' fees as permitted by law, and applicable interest.

## I.   THE ANNULMENT DECISION ANNULLED THE ORIGINAL COST DECISION AS TO BOTH PETITIONER AND ARIN CAPITAL

### A.   The Annulment Decision Explicitly Annulled the Original Cost Award in its Entirety.

The Annulment Decision on its face refutes Respondent's argument. The Annulment Decision annulled the Original Cost Decision against both Petitioner and Arin Capital. This is clear both from the body of the Annulment Decision, and from its *dispositif*.

#### 1.   Body of the Annulment Decision

The Annulment Decision annulled the award's dismissal of Petitioner's claims. Annulment Decision ¶¶ 185–243. The Annulment Committee then explicitly addressed the Original Cost Decision, which is found in paragraph 452(5) of the award. *See* Award ¶ 452(5). The Annulment Decision annulled this paragraph as well:

> That leaves the question of what to do about paragraph 452(5), in which the Tribunal ordered "the Claimants to pay the Respondent the sum of USD 337,466.34 for the expended portion of the Respondent's advances to ICSID and USD 400,000 towards the Respondent's legal fees and expenses."
>
> The Tribunal did not distinguish between the two Claimants, that is Mr Khudyan and Arin [Capital], in making this order. Only Mr Khudyan has sought annulment and the parts of the Award in which the Tribunal held that it lacked jurisdiction *ratione materiae* in respect of the claims by Arin [Capital] remain valid and effective. Nevertheless, the Committee is not in a position to determine for itself what portion of the costs awarded by the Tribunal relate to Mr Khudyan and what part to Arin [Capital], each of which was jointly and severally liable for the full amount awarded, as was clear from the Parties' submissions on the stay of execution. **It has therefore concluded that it must annul paragraph 452(5) in its entirety**.

Annulment Decision ¶¶ 244–245 (emphasis added).

Thus, had the tribunal apportioned liability between Petitioner and Arin Capital in the Original Cost Decision, the Annulment Committee could have left in place the amount due from Arin Capital after annulling the amount due from Petitioner. But the tribunal did not apportion liability. Therefore, the Annulment Committee annulled the Original Cost Decision "in its entirety." The meaning of "in its entirety" is self-evident: the full amount of the Original Cost Decision is annulled, there is nothing left of it, it is zero.

To attempt to dispute this, Respondent adds words to the Annulment Decision that are not there. In paraphrasing the above paragraphs, Respondent claims, "the Annulment Decision annuls the cost award in its entirety ***as against [Mr. Khudyan]***." Opposition/Counterpetition ¶ 41 (emphasis added). The Annulment Decision did not qualify or limit the annulment of the Original Cost Decision to be only "as against [Mr. Khudyan]." Had the Annulment Committee wanted to add this qualification, it would have done so. It did not. It annulled the Original Cost Decision "in its entirety," without any limitation or qualification. Respondent's argument that the full amount of the Original Cost Decision still remains outstanding (just from one claimant instead of two) is

irreconcilable with the Annulment Committee's unqualified annulment of the Original Cost Decision "in its entirety."[1]

Furthermore, in the above paragraph the Annulment Committee identified which portions of the Award remain valid as to Arin Capital – and the Original Cost Decision was not among them. The "parts of the Award in which the Tribunal held that it lacked jurisdiction *ratione materiae* in respect of the claims by Arin US remain valid and effective," but the Original Cost Decision is annulled "in its entirety." Annulment Decision ¶ 245. This contrast reinforces the fact that the Original Cost Decision is annulled as to Arin Capital.

### 2.    *Dispositif* of the Annulment Decision

The *dispositif* of the Annulment Decision removes all doubt that the Original Cost Decision is annulled as to both Petitioner and Arin Capital. The *dispositif* states the following:

> For the reasons set forth above, the *ad hoc* Committee unanimously DECIDES as follows:
>> (1) Paragraphs 203-267 and 452(1), (4) insofar as it concerns the Applicant, and (5) of the Award are hereby annulled;
>> (2) The funds held in escrow in accordance with the Committee's decision on the Applicant's Stay Request, together with all interest incurred thereon, are to be paid to Mr Khudyan; and
>> (3) The Respondent shall pay to the Applicant the following sums:
>>> (a) USD 288,465.57 in respect of the fees and costs of the Committee and ICSID; and
>>> (b) USD 149,928.27 in respect of counsel's fees and other costs.

*Id.* ¶ 259. Several aspects of the *dispositif* confirm that nothing is left of the Original Cost Decision (which was paragraph 452(5) of the Award).

First, the *dispositif* says paragraph 452(5) of the Award is annulled. *Id.* ¶ 259(1).

---

[1] Indeed, it makes no sense that the entire Original Cost Decision would remain intact, when at least a portion of those costs were attributable to the dismissal of Petitioner's claims, which dismissal is now annulled.

Second, the *dispositif* contrasts the annulment of paragraph 452(5) (the Original Cost Decision) with that of Paragraph 452(4), by saying the latter – ***not the former*** – is annulled only "as it concerns the Applicant" (i.e. Petitioner). Paragraph 452(4) of the Award dismissed the claims of both Petitioner and Arin Capital for lack of jurisdiction. *See* Award ¶ 452(4). The *dispositif* of the Annulment Decision annulled this paragraph only "insofar as it concerns [Petitioner]," because the dismissal of Arin Capital's claims was not challenged. *See* Annulment Decision ¶ 259(1). The *dispositif* of the Annulment Decision did ***not*** say that paragraph 452(5) (the Original Cost Decision) was annulled only "insofar as it concerns [Petitioner]," ***because it was annulled as to both Petitioner and Arin Capital***.

Third, the *dispositif* orders that "[t]he funds held in escrow . . . are to be paid to Mr Khudyan." *Id.* ¶ 259(2). The funds held in escrow represented the amount of the Original Cost Decision; the Annulment Committee had ordered Mr. Khudyan to deposit those funds into escrow pending the outcome of the annulment proceeding. *See id.* ¶¶ 20, 25, 31. If Respondent were entitled to these funds despite the outcome of the proceeding, the Annulment Committee would not have ordered the funds to be returned to Mr. Khudyan. By so ordering their return, the Annulment Committee confirmed that Respondent is no longer entitled to the Original Cost Decision, and Mr. Khudyan bears no liability for it, whether directly or indirectly.

### 3. Respondent's Protests Against the Annulment Decision Are Incorrect and Inadmissible in This Proceeding

Faced with the clear text of the Annulment Decision, Respondent argues that the Annulment Committee "did not have the authority to make any decision regarding Arin Capital" and the Original Cost Decision. *See* Opposition/Counterpetition ¶ 48.

As an initial matter, Respondent's critique is wrong. The Annulment Committee was right to annul the Original Cost Decision against both claimants. The tribunal had explicitly conditioned

the Original Cost Decision on its finding that "***the Claimants*** have lost this arbitration." Award ¶ 448 (emphasis added). In other words, the Original Cost Decision was conditioned on the fact that the claims of ***both*** Petitioner and Arin Capital had been dismissed. Once the dismissal of Petitioner's claims was annulled, the necessary condition for the Original Cost Decision fell away.

But more importantly, Respondent cannot make such critiques in this proceeding, for two reasons. First, under the ICSID Convention, "the domestic courts of member countries lack the authority to review the merits of a decision by an ICSID tribunal." *Micula v. Gov't of Romania*, 404 F. Supp. 3d 265, 269 (D.D.C. 2019), *aff'd*, 805 F. App'x 1 (D.C. Cir. 2020); *id.* at 275 ("A federal court is 'not permitted to examine an ICSID award's merits, its compliance with international law, or the ICSID tribunal's jurisdiction to render the award.'" (citing *Mobil Cerro Negro v. Bolivarian Republic of Venezuela*, 863 F.3d 96, 102, 121 (2d Cir. 2017)) (cleaned up)). Complaints about the correctness of the Annulment Committee's decision or its authority have no place before this Court.

Second, Respondent already argued this issue to the Annulment Committee and lost. In written briefs to the Committee, Respondent argued that since only Petitioner Mr. Khudyan sought annulment, the Committee had no power to stay enforcement of or annul the Original Cost Decision against Arin Capital. *See* Third Bedrosyan Decl.,[2] Ex. 1, Respondent's Opposition to the Stay of Enforcement of the Award filed in the Annulment Proceeding (Aug. 17, 2022) (Excerpts) ¶¶ 123–24; *id.,* Ex. 3, Respondent's Rejoinder on the Stay of Enforcement of the Award filed in the Annulment Proceeding (Sept. 6, 2022) (Excerpts) ¶¶ 31–37. Petitioner Mr. Khudyan countered

---

[2] In this Reply, "First Bedrosyan Decl." refers to the Declaration of Alexander Bedrosyan, dated April 12, 2024 (ECF No. 1-1); "Second Bedrosyan Decl." refers to the Declaration dated October 30, 2024 (ECF No. 9-1), while "Third Bedrosyan Decl." refers to the Declaration submitted with this Reply. Furthermore, references to the page numbers of an exhibit refer to the page number in the stamp at the top of the page, not any other internal pagination.

that "the Tribunal expressly stated that its decision on costs resulted from the fact that 'the Claimants have lost this arbitration.' It is entirely speculative whether the Tribunal would have issued the same costs decision if it had not" dismissed Mr. Khudyan's claims, and "Mr. Khudyan's application to annul the Tribunal's jurisdictional finding, if accepted, would necessarily annul the reasoning underlying the cost award." *Id.* Ex. 2, Petitioner's Reply on the Stay of Enforcement of the Award filed in the Annulment Proceeding (Aug. 16, 2022) (Excerpts) ¶ 16. The Annulment Committee ended up siding with Mr. Khudyan. *See* Annulment Decision ¶¶ 244–45. Respondent cannot relitigate before this Court an issue on which it was fully heard before the Annulment Committee. *See Valores Mundiales, S.L. v. Bolivarian Republic of Venezuela, Ministerio del Poder Popular para Relaciones Exteriores*, 87 F.4th 510, 519 (D.C. Cir. 2023) ("Preventing relitigation of issues already decided is the keystone of the full faith and credit obligation."); *id.* at 520 ("Venezuela's attempt cannot succeed because Section 1650a prohibits relitigation of issues that have been fully considered, carefully addressed, and decided on the merits in an ICSID action.").

For all of the above reasons, the Annulment Decision refutes Respondent's argument.

### B.    Respondent's Conduct Confirms that Petitioner's Pecuniary Rights under the Annulment Decision Are Unencumbered.

Respondent's conduct during and since the annulment proceeding also contradicts its present argument that Petitioner owes money under the Original Cost Decision. During the annulment proceeding, the Parties briefed the question of whether enforcement of the Original Cost Decision should be stayed pending the outcome of the annulment. Mr. Khudyan argued that enforcement should be stayed, because if Respondent collected the Original Cost Decision but then the Original Cost Decision were annulled, it would be impossible to recoup the money from Respondent. *See* First Bedrosyan Decl. ¶ 7 (ECF No. 1-1). To oppose this argument, Respondent twice explicitly represented to the Annulment Committee that it would comply with any order by

the Annulment Committee to pay or return money to Petitioner if Petitioner won the annulment. *Id.* ¶¶ 7a, 7b; *see also* Third Bedrosyan Decl., Ex. 1 ¶ 153; Ex. 3 ¶ 59.

Not only has Respondent violated these representations by failing to pay the Annulment Decision, but these representations contradict its present argument. They concede that Petitioner's success in the annulment would extinguish Respondent's right to the Original Cost Decision and could entitle Petitioner to funds. This is inconsistent with Respondent's argument to this Court that the annulment cannot affect its right to the Original Cost Decision (or entitle Petitioner to any payment). Opposition/Counterpetition ¶ 48.

Likewise, as noted, the Committee ordered Petitioner to deposit the amount of the Original Cost Decision into escrow pending the outcome of the annulment. Annulment Decision ¶¶ 20, 25, 31. Since Petitioner won the annulment, the Annulment Decision ordered that the funds be returned to him from escrow. *Id.* ¶ 259(2). After being chased by the escrow agent, Respondent's counsel admitted that Respondent had no objection to the funds being released to Petitioner. *See* Correspondence between Sally Rowshan, Secured Trust Escrow, and Teddy Baldwin, Counsel for Armenia, October 2023 (ECF No. 1-3) at 2 ("On behalf of my client, I note that the Republic of Armenia has not filed or otherwise made a formal objection to the release of the escrow funds to Mr. Khudyan."). To avoid all doubt, the escrow agent gave Respondent one final opportunity to object to the release of the funds. *Id.* Respondent did not communicate any objection, and the funds were released to Petitioner on November 2, 2023. First Bedrosyan Decl. ¶ 12.

In other words, in October and November 2023, Respondent recognized that it did not have a claim to funds comprising the Original Cost Decision. Yet today, before this Court, it argues that it is owed the Original Cost Decision after all.

Respondent's about-faces prove that its argument to this Court is opportunistic and wrong.

**C.    The ICSID Secretary-General Confirmed that the Original Cost Decision is Annulled.**

Finally, the ICSID Secretary-General put the matter to rest. On June 13, 2024, Petitioner wrote through undersigned counsel to the ICSID Secretary-General. *See* Third Bedrosyan Decl., Ex. 4, Letter from Petitioner to the ICSID Secretary-General, dated June 13, 2024. The letter (i) stated that the Decision on Annulment ordered Respondent to pay $438,393.84 to Petitioner, which Respondent had not yet paid; (ii) stated that the Decision on Annulment "also annulled several paragraphs of the Award dated 15 December 2021, ***including the cost order against Mr. Khudyan and Arin Capital & Investment Corp.***"; and (iii) requested that ICSID remind Respondent to "observe its obligation under Article 53 of the ICSID Convention in connection with the [Annulment Decision] and [Award], by paying Mr. Khudyan $438,393.84." *Id.* (emphasis added).

Respondent – through the same counsel it has before this Court – responded eleven days later. In its response, ***it did not mention or make any claim to the Original Cost Decision***. *See* Third Bedrosyan Decl., Ex. 5, Letter from Respondent to the ICSID Secretary-General, dated June 24, 2024. Thus, when Respondent writes in its brief that its letter "not[ed] the outstanding payment obligation by Arin Capital" and the "remaining award debt of Arin Capital under the original Award," Opposition/Counterpetition ¶ 49, this is a blatant falsehood. In the letter Respondent mentioned only unspecified "setoffs against court judgments," and asked that ICSID "take no further cognizance of this matter." Third Bedrosyan Decl., Ex. 5 at 2-3.

The ICSID Secretary-General rejected Respondent's request to ignore the matter. On June 28, 2024, it sent a letter addressed to Vahe Houhannisyan, Respondent's Minister of Finance. *See* Second Bedrosyan Decl., Ex. 3, Letter from ICSID Secretary-General to Armenia (ECF No. 9-4) at 3 ("Dear Sir, I write to you in your capacity as representative of the Republic of Armenia to the Administrative Council of [ICSID]."). Copied at the bottom of the letter were several others in

Respondent's Ministry of Finance and the Deputy Prime Minister's Office, Respondent's in-house counsel, as well as Respondent's and Petitioner's external counsel – Petitioner himself was not copied, Arin Capital was not copied, and no counsel for Arin Capital was copied. *Id.* at 4-5. Thus, when Respondent characterizes the letter as "addressed to Armenia, Petitioner and Arin Capital" (Opposition/Counterpetition ¶ 49), this is another blatant falsehood.

The electronic filename of the letter was, "Letter to Armenia re Compliance with Decision on Annulment." Second Bedrosyan Decl., Ex. 3, Letter from ICSID Secretary-General to Armenia (ECF No. 9-4) at 2. The letter stated that the Annulment Decision "ordered the Republic of Armenia to pay Mr. Edmond Khudyan the total sum of USD 438,393.84," and that "the sum ordered to be paid in the Decision remains unpaid." *Id.* It "remind[ed] the parties that, pursuant to Article 53(1) and (2) of the ICSID Convention, parties are required to abide by and comply with the terms of awards and annulment decisions." *Id.* at 3. The ICSID Secretary-General's letter ***did not mention the Original Cost Decision***. *Id.*

The ICSID Secretary-General thus made plain that the only pecuniary obligation arising out of the Award and Annulment Decision is the $438,393.84 owed by Respondent to Petitioner. The fact that Respondent did not make its argument about the Original Cost Decision to the ICSID Secretary-General – the audience most appropriate for such an argument – speaks volumes about its position before this Court today.

For all of the above reasons, Respondent is not owed any money under the annulled Original Cost Decision, and its Opposition/Counterpetition – which is predicated on this decision – must be dismissed.

## II.    IN ANY EVENT, RESPONDENT CANNOT SHIFT ANY ALLEGED LIABILITY UNDER THE ORIGINAL COST DECISION TO PETITIONER

Even ignoring the annulled status of the Original Cost Decision, Respondent's attempt to interpose it against Petitioner via an alter ego theory also fails.

### A.    Respondent Has Not Confirmed the Original Cost Decision Against Arin Capital, Nor Could It Do So Before This Court.

An (alleged) award creditor cannot use an award confirmation proceeding to attempt to shift liability to a third-party via an alter-ego/veil-piercing theory; it must first confirm the award against the award debtor. "An action for confirmation is not the proper time for a District Court to pierce the corporate veil." *Leeward Const. Co. v. Am. Univ. of Antigua*, No. 12 Civ. 6280(LAK), 2013 WL 1245549 at *1 (S.D.N.Y. March 26, 2013), *aff'd*, 826 F.3d 634 (2d Cir. 2016) (citing *Orion Shipping & Trading Co. v. Eastern States Petroleum Corp.,* 312 F.2d 299, 301 (2d Cir. 1963)). "[W]hile a motion to confirm is not the proper mechanism for piercing the corporate veil, veil-piercing may be available *after* a union establishes their right to money judgment against the corporate entities. Thus, after confirmation of an arbitration award, courts have proceeded to examine whether that award could be enforced against an individual shareholder." *Dist. Council No. 9 v. APC Painting, Inc.*, 272 F.Supp.2d 229, 240-41 (S.D.N.Y. 2003) (emphasis in original; cleaned up); *see also Lumber Liquidators, Inc. v. Sullivan*, Civil Action No. 10–11890–NMG, 2011 WL 5884252 at *4 (D. Mass. Sept. 27, 2011) ("If Lumber Liquidators wishes to enforce an [arbitrator's] injunction against [a third party] under Rule 65(d)(2)(C) or an alter-ego theory, it must pursue subsequent litigation *after judicial confirmation of the arbitration award*." (emphasis added)); *see also Eletson Holdings, Inc. v. Levona Holdings Ltd.*, 731 F.Supp.3d 531, 589 (S.D.N.Y. 2024) ("[i]f the prevailing party seeks to hold the alter ego responsible for the relief awarded by the arbitrator, it must do so through a separate action in court to pierce the corporate veil," not in a confirmation action).

Indeed, where an ICSID award creditor has sought to collect from an alleged alter ego of the award debtor, the award creditor first confirmed the award under 22 U.S.C. § 1650A against the award debtor, and only then sought to establish the alleged alter ego's liability for the resulting money judgment. *See, e.g.*, *Funnekotter v. Agric. Dev. Bank of Zimbabwe*, No. 13 Civ. 1917(CM), 2015 WL 9302560, at *1 (S.D.N.Y. Dec. 17, 2015) ("Plaintiffs obtained a default judgment in their favor against Zimbabwe confirming the arbitral award," before beginning current action seeking declaratory judgment that defendants were Zimbabwe's alter egos); *Crystallex Int'l Corp. v. Bolivarian Rep. of Venezuela*, 333 F.Supp.3d 380, 386 (D. Del. 2018), *aff'd and remanded*, 932 F.3d 126 (3d Cir. 2019) (award creditor confirmed award against Venezuela before this Court, registered the resulting judgment in Delaware federal court, and sought to execute on Delaware assets of Venezuela's alleged alter ego).

Here, Respondent has not confirmed or attempted to confirm the Original Cost Decision against Arin Capital, the alleged award debtor. This not only indicates (again) that Respondent is aware that the Original Cost Decision is no longer valid, but also forecloses Respondent's attempt to impose alter ego liability on Mr. Khudyan.

Even if Respondent had attempted to confirm the Original Cost Decision against Arin Capital in this proceeding, such an attempt would have failed for lack of personal jurisdiction. The case *Frontenac Intern., S.A. v. Global Marketing Systems, JLT*, is instructive. Civil Action No. RDB–13–00122, 2012 WL 2896896 (D. Md. June 11, 2013). There, the court reiterated that where courts had entertained attempts to hold a party other than the award debtor liable for an arbitration award, "the courts had personal jurisdiction over the party against which the award was entered and in fact confirmed the award against that party." *Id.* at *5. The case at bar involved a cost award against an out-of-state defendant, Providence. *Id.* at *6. The plaintiff attempted to hold

Providence's Maryland-based alleged alter egos liable for the cost award, and to rely on the alleged alter ego relationship as the "linchpin" for personal jurisdiction over Providence. *Id.* However, "the precedent clearly indicates that the award must first be confirmed as to Providence before [plaintiff] can seek to pierce an alleged corporate veil with respect to [third parties]. [Plaintiff] has failed to allege that the exercise of personal jurisdiction over Providence is permitted under the state's long arm statute." *Id.* As a result, the court "cannot confirm the Costs Award against [Providence], nor against the alleged alter egos." *Id.*

So too here. Arin Capital is incorporated and based in California. Opposition/Counterpetition ¶ 50. It is therefore not subject to this Court's general personal jurisdiction, and Respondent alleges no facts that would support the exercise of specific personal jurisdiction over it under D.C. Code § 13-423(a) and the Due Process Clause. *See generally* Opposition/Counterpetition.

Nor could Respondent do so. For personal jurisdiction in an arbitral award confirmation action, the relevant contacts between a foreign defendant and the forum must relate to the underlying dispute giving rise to the arbitration, not the arbitration itself. *See Compañía de Inversiones Mercantiles, S.A. v. Grupo Cementos de Chihuahua S.A.B. de C.V.*, 970 F.3d 1269, 1287 (10th Cir. 2020) ("[T]he proper jurisdictional inquiry is whether the beneficiary of an award can show he or she sustained an injury caused by the defendant's forum activities in connection with the claim that led to the arbitration, as opposed to an injury caused by the defendant's forum activities in connection with the arbitration proceeding itself."); *Solé Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 106 (2d Cir. 2006) ("On remand, the district court should consider whether the parties' conduct in negotiating, consummating, and performing the contract which ultimately led to the challenged arbitration satisfies the definition of 'transacting business'

in [New York's long-arm statute]."); *see also Conti 11. Container Schiffarts-GMBH & Co. KG M.S., MSC Flaminia v. MSC Mediterranean Shipping Co. S.A.*, 91 F.4th 789, 796 & n.5 (5th Cir. 2024) ("Six other circuits follow an approach similar to the Tenth and Second Circuits with respect to evaluating personal jurisdiction over actions to confirm arbitral awards" (collecting cases)). Here, the underlying dispute between Petitioner, Arin Capital, and Respondent concerning the real estate took place in Armenia, not the District of Columbia. *See* Annulment Decision ¶ 46; Award ¶¶ 75–150.[3] It does not support personal jurisdiction over Arin Capital.

Thus, Respondent's alter ego allegations are not properly before this Court.

## B.    Respondent's Alter Ego Allegations Are Insufficient

In any event, the allegations fail on the substance. The Award **explicitly rejected Respondent's attempt to pierce the veil of Arin Capital during the arbitration**:

> While the Tribunal appreciates that in exceptional cases of (suspected) abuse, there may be reasons to analyse the nationality of a corporation beyond the mere incorporation requirement, it notes that the Respondent has not advanced such an argument, ***nor has it made a* prima facie** *showing of abuse of Arin [Capital]'s corporate form that would warrant investigating such an abuse*.
>
> Accordingly, the Tribunal concludes that **there are no grounds to, as the Respondent requests, "pierce the corporate veil"** by disregarding "[Arin Capital's] state of incorporation and determine

---

[3] Even if this Court were to consider contacts related to the arbitration and annulment, the fact that the hearings in these proceedings occurred at the ICSID headquarters in Washington D.C. would not be enough to sustain personal jurisdiction in this District. ICSID is a public international organization, and as such enjoys immunity from U.S. law. *See* 22 U.S.C. § 288; Ex. Ord. No. 11966, Jan. 19, 1977, 42 Fed. Reg. 4331. A party's conduct on the premises of an international organization located in a U.S. state or district generally cannot give rise to personal jurisdiction. *See Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria*, 937 F.2d 44, 46, 51 (2d Cir. 1991) ("[T]he PLO's participation in the UN is dependent on the legal fiction that the UN Headquarters is not really United States territory at all, but is rather neutral ground over which the United States has ceded control. For a federal court then to turn around and conclude that the PLO has been doing business in New York as a result of its UN activities would, we believe, be rather duplicitous."). Indeed, the ICSID Convention provides that "persons appearing in proceedings under this Convention as parties" shall "enjoy immunity from legal process with respect to acts performed by them" in these capacities. *See* ICSID Convention, Mar. 18, 1965, 17 U.S.T. 1270, arts. 21–22. Subjecting a party to personal jurisdiction because of the party's attendance of a hearing in an ICSID proceeding would be inconsistent with this grant of immunity.

its nationality according to the nationality of its predominant shareholder and manager."

Award ¶¶ 283–84 (emphases added). It is damning that, although Respondent's Opposition/Counterpetition cites the Award extensively, it never draws the Court's attention to these paragraphs.

Respondent's cursory treatment of California law is also wanting. While it recites the two requirements for alter ego liability under California law, *see* Respondent/Opposition ¶ 50 (unity of interest plus inequitable result), it neglects to mention that the California Court of Appeal has listed ***nine*** factors that inform the analysis, and stated "[a]lter ego is an extreme remedy, sparingly used." *Hasso v. Hapke*, 227 Cal.App.4th 107, 155 (2014) (affirming dismissal of alter ego claim).[4] Respondent does not analyze these factors or address the high standard in the few paragraphs it devotes to the question. *See* Opposition/Counterpetition ¶¶ 52–54.

Respondent instead refers selectively to portions of the Award quoting Mr. Khudyan's argument in the arbitration that he acted as Arin Capital's agent when acquiring real estate in Armenia in 2003-2007 using Arin Capital's funds. *Id.* Mr. Khudyan's argument – which Respondent's brief obscures – was that he acquired the real estate "in his capacity as Chief Executive Officer of Arin [Capital]." Award ¶ 419. Respondent does not explain how (1) the principal-agent relationship between a company and its officer would create an alter ego relationship between the company and its shareholder; nor (2) how transactions from 2003-2007 could show an alter ego relationship two decades later. And in any case the Award ***did not credit*** Mr. Khudyan's argument that he was an agent for Arin Capital or used Arin Capital's funds. *See*

_____

[4] "Among the factors to be considered in applying the doctrine are [1] commingling of funds and other assets of the two entities, [2] the holding out by one entity that it is liable for the debts of the other, [3] identical equitable ownership in the two entities, [4] use of the same offices and employees, and [5] use of one as a mere shell or conduit for the affairs of the other.' Other factors which have been described in the case law include [6] inadequate capitalization, [7] disregard of corporate formalities, [8] lack of segregation of corporate records, and [9] identical directors and officers." (citations omitted).

Award ¶ 419 ("Nor does the contemporaneous documentary record provide any indication that the assets were acquired with funds of Arin [Capital]."). (Indeed, Respondent had vigorously opposed Mr. Khudyan's agency argument during the arbitration, and had the tribunal accepted the argument, it would have found that Arin Capital made an investment in Armenia and would not have dismissed Arin Capital's claims.) Thus, the factual predicate for Respondent's alter ego claim fails.

For all of these reasons, Respondent's alter ego claim must be rejected.

## III.    RESPONDENT'S FALSE INSINUATIONS AGAINST PETITIONER DO NOT PROVIDE A BASIS TO AVOID RECOGNITION OF THE ANNULMENT DECISION

Respondent insinuates that Petitioner violated the Foreign Corrupt Practices Act and other laws. Opposition/Counterpetition ¶¶ 57–58. This is entirely false; not only has Mr. Khudyan never been so prosecuted, but the Award notes that the Armenian criminal authorities found him to be a victim of the criminal scheme in Armenia, and the criminal court there awarded him substantial damages. *See* Award ¶ 150.

But more to the point, these accusations do not affect the full faith and credit this Court owes to the Annulment Decision. Respondent alludes to the public policy exception to enforcing arbitral awards under the New York Convention, even as it concedes that that Convention does not apply. Opposition/Counterpetition ¶ 58. However, the Supreme Court's "decisions support no roving 'public policy exception' to the full and credit due judgments," and therefore ICSID awards under 22 U.S.C. § 1650A. *See Valores Mundiales*, 87 F.4th at 519 (quoting *Baker by Thomas v. General Motors Corp.*, 522 U.S. 222, 223 (1998)). Plus, allegations of foreign corruption are not enough even to sustain the public policy exception under the New York Convention. *See Belize Soc. Dev. v. Belize*, 5 F. Supp. 3d 25, 43 (D.D.C. 2013) (in light of the "emphatic federal policy in favor of arbitral dispute resolution . . . U.S. courts have enforced arbitral awards in the face of

public policy interests at least as weighty as the policy against corruption abroad" (quotations and citations omitted)).

Respondent has not provided any reason not to recognize the Annulment Decision.

## **CONCLUSION**

For the foregoing reasons, the Court should grant Petitioner's Petition, deny Respondent's Counterpetition, and enter judgment in favor of Petitioner in the amount of $438,393.84 plus costs, attorneys' fees as permitted by law, and applicable interest.

Dated: March 11, 2025                     Respectfully submitted,

                                          _____/s/ Alexander S. Bedrosyan_____
                                          Alexander S. Bedrosyan (D.C. Bar 1044386)
                                          LEWIS BAACH KAUFMANN
                                          MIDDLEMISS PLLC
                                          1050 K Street NW, Suite 400
                                          Washington, DC 20001
                                          Tel.: (202) 659-7874; Fax: (202) 466-5738
                                          alexander.bedrosyan@lbkmlaw.com
                                          *Attorney for Petitioner Mr. Edmond Khudyan*

17

## <u>INDEX OF EXHIBITS</u>

### Attached Exhibits

1. **Exhibit 1:** Respondent's Opposition to the Stay of Enforcement of the Award filed in the Annulment Proceeding, dated August 17, 2022 (Excerpts).

2. **Exhibit 2:** Petitioner's Reply on the Stay of Enforcement of the Award filed in the Annulment Proceeding, dated August 26, 2022 (Excerpts).

3. **Exhibit 3:** Respondent's Rejoinder on the Stay of Enforcement of the Award filed in the Annulment Proceeding, dated September 6, 2022 (Excerpts).

4. **Exhibit 4:** Letter from Petitioner to the ICSID Secretary-General, dated June 13, 2024.

5. **Exhibit 5:** Letter from Respondent to the ICSID Secretary-General, dated June 24, 2024.

### Cited Exhibits Already On the Docket

1. Bedrosyan Declaration of April 12, 2024 (ECF No. 1-1).

2. Annulment Decision of July 21, 2023 (ECF No. 1-2).

3. Correspondence between Sally Rowshan, Secured Trust Escrow, and Teddy Baldwin, Counsel for Armenia, October 2023 (ECF No. 1-3).

4. Letter from ICSID Secretary-General to Armenia, dated June 28, 2024 (ECF No. 9-4).

5. Award of December 15, 2021 (ECF No. 15-2).