UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| EDMOND KHUDYAN, ) | |
| Plaintiff, ) | |
| v. ) | Civil Action No. 24-1054 (RBW) |
| REPUBLIC OF ARMENIA, ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

The plaintiff, Edmond Khudyan, brings this civil action against the defendant, the Republic of Armenia, pursuant to 22 U.S.C. § 1650a and Article 54 of the Convention on the Settlement of Investment Disputes between States and Nationals of Other States (the "ICSID Convention"), seeking recognition and enforcement of a judgment entered in an International Centre for Settlement of Investment Disputes ("ICSID") annulment decision in the amount of $438,393.84 issued in favor of the plaintiff and against the defendant by an international tribunal on July 21, 2023, in ICSID Case No. ARB/17/36. See Petition to Recognize Arbitration Award Pursuant to 22 U.S.C. § 1650a, Exhibit ("Ex.") 1 (Khudyan v. Republic of Armenia, ICSID Case No. ARB/17/36, Decision on Annulment ¶ 259 (July 21, 2023)) ("Annulment Decision"), ECF No. 1-2.

Currently pending before the Court are (1) the plaintiff's Petition to Recognize Arbitration Award Pursuant to 22 U.S.C. § 1650a ("Pl.'s Pet."), ECF No. 1, which the defendant opposes, see Opposition to Khudyan's Petition to Enforce Annulment Award, Counterpetition to Confirm Arbitral Award ("Def.'s Counterpet.") at 1, ECF No. 15; and (2) the defendant's counterpetition to confirm a prior arbitral award in favor of the defendant and against the

plaintiff and Arin Capital & Investment Corporation ("Arin Capital"),[1] see id.  Upon careful consideration of the parties' submissions,[2] the Court concludes for the following reasons that it must grant the plaintiff's petition and deny the defendant's counterpetition.

## I.    BACKGROUND

**1. Factual and Procedural Background**

In 2017, the plaintiff, along with Arin Capital, "the company of which he is a sole shareholder," submitted arbitration claims against the defendant to the ICSID, alleging that the defendant "violated international law by failing to prevent the embezzlement of his investment in a real estate development."  Pl.'s Pet. ¶ 19.  The defendant argued that the ICSID did not have jurisdiction over those claims because the plaintiff "was an Armenian citizen and [ ] his co-claimant did not invest in the real estate."  Id.  On December 15, 2021, an ICSID tribunal "upheld [the defendant]'s jurisdictional objections . . . [and] ordered [the plaintiff] and his co-claimant [Arin Capital] jointly and severally [liable] to reimburse a portion of [the defendant]'s costs in the arbitration."  Id. ¶ 20 (citing Annulment Decision ¶¶ 69–71); see Def.'s Counterpet., Ex. 1 (Khudyan et al. v. Republic of Armenia, ICSID Case No. ARB/17/36, Award ¶ 452 (Dec. 15, 2021)) ("Original Cost Decision"), ECF No. 15-2.

In February 2022, the plaintiff contacted the Head of the Republic of Armenia's Passport and Visa Department, which confirmed that the plaintiff was never a citizen of the Republic of Armenia.  See Pl.'s Pet. ¶ 21 (citing Annulment Decision ¶ 126).  Subsequently, "[o]n April 8, 2022, [the plaintiff] sought annulment of the award's citizenship finding and cost order under

---

[1] The parties and the ICSID decisions at issue in this case also refer to this entity as Arin US.  For consistency, the Court refers to Arin Capital throughout.

[2] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the plaintiff's Reply in Support of His Petition to Recognize Arbitration Award and in Opposition to Respondent's Counter-Petition ("Pl.'s Opp'n"), ECF No. 16, and (2) the defendant's Reply to its Counterpetition to Confirm Arbitral Award ("Def.'s Reply"), ECF No. 19.

Article 52(1)(b) of the ICSID Convention, claiming that the tribunal 'manifestly exceeded its powers' by failing to exercise jurisdiction over him." Id. ¶ 22 (citing Annulment Decision ¶¶ 7, 72). Pending the outcome of the Annulment Proceeding, the Annulment Committee "ordered [the plaintiff] to put the amount of the costs order into escrow as a condition for staying enforcement, which [he] did." Id. ¶ 23 (citing Annulment Decision ¶¶ 25, 30–31).

On July 21, 2023, the Annulment Committee "upheld [the plaintiff]'s application, finding that the 'starting point' of the tribunal's citizenship analysis consisted of an assumption that was never substantiated." Id. ¶ 24 (citing Annulment Decision ¶¶ 187–217). Therefore, the Committee annulled in part the Original Cost Decision, but annulled in full the Original Cost Decision's order that the plaintiff and Arin Capital pay the defendant an award of fees and costs. See id. ¶ 26 (quoting Annulment Decision ¶¶ 244–45). In issuing the decision, the Committee recognized that although only Mr. Khudyan had sought annulment and, thus, the Original Cost Decision's jurisdictional conclusions as to Arin Capital "remain[ed] valid and effective[,]" id., because "[t]he Tribunal did not distinguish between the two Claimants[,]" id., "the Committee is not in a position to determine for itself what portion of the costs awarded by the Tribunal relate to Mr[.] Khudyan and which part to Arin [Capital], each of which was jointly and severally liable for the full amount awarded," id. Therefore, the Committee determined that the only course of action was to annul the award in full. See id. In addition to annulling the Original Cost Decision's award of costs and fees, the Committee "ordered [the defendant] to reimburse all of the plaintiff's incurred costs, which amounted to $438,393.84." Id. ¶ 27 (citing Annulment Decision ¶¶ 252–58). Despite the Committee's rulings, the plaintiff represents that "[the defendant] has not yet paid [him.]" Id. ¶ 30.

3

Consequently, on April 12, 2024, the plaintiff filed his Petition in this Court, see id. at 1, requesting, inter alia, that the Court (1) "[o]rder[] that the pecuniary obligation in the Annulment Decision in favor of [the plaintiff] against [the defendant] be recognized and entered as a judgment . . . in the same manner and with the same force and effect as if the Annulment Decision were a final judgment of this Court," id. at 9; and (2) "[e]nter[] judgment in favor of [the plaintiff] against [the defendant] equal to [ ]$438,393.84, plus applicable post-judgment interest up to the date when payment is made full[,]" id.  And, on October 22, 2024, the Clerk of this Court entered a default against the defendant, see Default at 1 (Oct. 22, 2024), ECF No. 8, in response to the plaintiff's request, see Affidavit in Support of Default at 2, ECF No. 6.  Shortly thereafter, on October 30, 2024, the plaintiff moved for a default judgment pursuant to 28 U.S.C. § 1608(e) and Federal Rule of Civil Procedure 55(b)(2), alleging that the defendant "was properly served with the Summons and Petition over six months [prior], and . . . failed to file a responsive pleading or otherwise appear."  See Petitioner Edmond Khudyan's Motion for Entry of Default Judgment at 2, ECF No. 9.

Subsequently, on January 21, 2025, the defendant filed its Motion to Set Aside Entry of Default Judgment, ECF No. 13, alleging that "service [of process] was improper[,]" id. at 1, and, on February 2, 2025, the parties moved jointly to vacate the Clerk's entry of the default, with the defendant consenting to "waive all objections regarding service [of process and personal jurisdiction,]" see Parties' Joint Motion to Vacate the October 22, 2024[,] Clerk Entry of Default and Extend Time for Defendant to Respond to the Petition ("Joint Mot.") at 2, ECF No. 14, which the Court granted, see Minute Order (February 4, 2025).

On February 2, 2025, the defendant filed its combined opposition and counterpetition, see Def.'s Counterpet. at 1, requesting that the Court (1) "[c]onfirm[], recogniz[e], and enforc[e] the

[Original Cost Decision] against Mr. [ ] Khudyan as the alter ego of Arin Capital[,]" Def.'s Counterpet. at 18; (2) "[e]nter[] judgment against Mr. [ ] Khudyan as the alter ego of Arin Capital . . . in an amount equal to the full amount of the [Original Cost Decision], $737,466.34, plus [ ] post-[a]ward interest . . . [and] post-judgment interest[,] . . . as well as [ ] the costs of this proceeding[,]" id.; and (3) "[d]eclin[e] confirmation of the Annulment Decision as the basis of this action and [a]rbitration arising from [the plaintiff]'s [alleged] violations of [federal] and California [state] law[,]" id. The plaintiff then filed his reply to the defendant's combined opposition and counterpetition on March 11, 2025, see Pl.'s Reply at 1, and, on March 18, 2025, the defendant filed its reply in support of its counterpetition, see Def.'s Reply at 1.[3]

## II.   STANDARD OF REVIEW

The ICSID Convention is "a multilateral treaty aimed at encouraging and facilitating private foreign investment in developing countries." Micula v. Gov't of Romania ("Micula II"), 404 F. Supp. 3d 265, 268–69 (D.D.C. 2019) (quoting Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela, 863 F.3d 96, 100 (2d Cir. 2017)). To accomplish this objective, the ICSID Convention "provid[es] a legal framework and procedural mechanism to resolve disputes between private investors and governments[,]" id., through which ICSID "convenes arbitration panels to adjudicate disputes between international investors and host governments in [c]ontracting [s]tates[,]" id. (internal quotation marks omitted). "If a dispute arises about the 'meaning or scope of an award, either party may request interpretation of the award' by submitting a request to the Secretary-General of [the] ICSID, who must then refer the request to

---

[3] In its reply the defendant represented that it "plan[ned] to bring a motion" requesting that the Court conclude that Arin Capital is the plaintiff's alter ego, see Def.'s Reply at 5, but it has not filed anything further on the docket as of the date of the issuance of this Memorandum Opinion. And, because the Court ultimately concludes that it must enforce the Annulment Decision in favor of the plaintiff and against the defendant, and cannot enforce the Original Cost Decision, the grounds for any such motion would be moot.

[the] original tribunal or, if not possible, to a new tribunal." TECO Guat. Holdings, LLC v. Republic of Guatemala, 414 F. Supp. 3d 94, 100 (D.D.C. 2019) (quoting ICSID Convention art. 50). "[I]f the tribunal was not properly constituted, manifestly exceeded its powers, was infected with corruption, or failed to state the reasons for its award, or if there was a serious departure from a fundamental rule or procedure, either party may seek annulment of the award by an ad hoc committee." Id. at 100–01 (citing ICSID Convention art. 52).

"The [ICSID] Convention . . . did not confer upon [the] ICSID the power to enforce its [arbitral] awards[,]" but rather "left that function to its contracting states." Micula v. Gov't of Romania ("Micula I"), 104 F. Supp. 3d 42, 45 (D.D.C. 2015). Accordingly, Article 54(1) of the ICSID Convention provides:

> Each Contracting State shall recognize an award rendered pursuant to this Convention as binding and enforce the pecuniary obligations imposed by that award within its territories as if it were a final judgment of a court in that State. A Contracting State with a federal constitution may enforce such an award in or through its federal courts and may provide that such courts shall treat the award as if it were a final judgment of the courts of a constituent state.

ICSID Convention, ch. IV, § 6, art. 54(1). "[B]oth the Convention and its implementing legislation strictly limit a federal court's authority to review an ICSID award[,]" because the ICSID "Convention treats Contracting States' courts as courts of enforcement, not review." Valores Mundiales, S.L. v. Bolivarian Republic of Venezuela, 87 F.4th 510, 518 (D.C. Cir. 2023) (internal citations omitted).

The United States ratified the ICSID Convention on June 10, 1966. See Mobil Cerro, 863 F.3d at 101. Congress then passed the Investment Disputes Act (the "Act"), which "gave the ICSID Convention domestic effect[.]" Micula II, 404 F. Supp. 3d at 269; see Convention on the Settlement of Investment Disputes Act of 1966, Pub. L. No. 89-532, § 3, 80 Stat. 344, 344 (1966). Pursuant to that Act, "the United States instructs its federal courts to 'enforce[]'—i.e.,

confirm—ICSID awards and give them 'the same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several States.'" Nextera Energy Glob. Holdings B.V. v. Kingdom of Spain, 112 F.4th 1088, 1098 (D.C. Cir. 2024) (quoting 22 U.S.C. § 1650a(a)) (alteration in original).

"Although the Court's role in enforcing an ICSID arbitral award is [ ] exceptionally limited, the Court is more than a 'rubber stamp.'" TECO Guat. Holdings, 414 F. Supp. 3d at 101. "The Court must ensure that it has subject-matter and personal jurisdiction, must ensure that the award is authentic, and must ensure that its enforcement order is consistent with the award." Id. (internal citations omitted); see also Tethyan Copper Co. Pty v. Islamic Republic of Pak., 590 F. Supp. 3d 262, 268 (D.D.C. 2022); Cube Infrastructure Fund SICAV v. Kingdom of Spain, No. 20-cv-1708-EGS-MAU, 2023 WL 2914472, at *11 (D.D.C. Mar. 31, 2023). Once those elements are satisfied, "the appropriate course of action . . . to enforce an authenticated ICSID award is to treat it in the same manner as a state court judgment." TECO Guat. Holdings, 414 F. Supp. 3d at 102. However, in both the ICSID context and the arbitration context more broadly, a court "may not attempt to enforce an award that is ambiguous or indefinite." Am. Postal Workers Union v. U.S. Postal Serv., 254 F. Supp. 2d 12, 15 (D.D.C. 2003) (citing Ams. Ins. v. Seagull Compania Naviera, S.A., 774 F.2d 64, 67 (2d Cir. 1985)); see Duke Energy Int'l Peru Invs. No. 1 Ltd. v. Republic of Peru ("DEI II"), 904 F. Supp. 2d 131, 133 (D.D.C. 2012) (citations omitted) (applying general arbitration principles to the ICSID context).

Remand of an ICSID award to an arbitration panel is "an exceptional remedy . . . [that] is only warranted where the award is 'so ambiguous that a court is unable to discern how to enforce it.'" DEI II, 904 F. Supp. 2d at 133 (quoting Duke Energy Int'l Peru Invs. No. 1 Ltd. v. Republic of Peru ("DEI I"), 892 F. Supp. 2d 53, 57 (D.D.C. 2012)). An award is ambiguous if it is

7

susceptible to more than one interpretation or "fails to address a contingency that later arises." Id. (quoting Green v. Ameritech, 200 F.3d 967, 977 (6th Cir. 2000)). "In determining whether an award is ambiguous, [the C]ourt[] [is] not confined to the award's text . . . [and] may enforce a seemingly ambiguous award if the record clearly resolves the award's meaning." Trs. of the N.Y. State Nurses Ass'n Pension Plan v. White Oak Glob. Advisors, LLC, 102 F.4th 572, 607 (2d Cir. 2024); accord Sargent v. Paine Webber Jackson & Curtis, Inc., 882 F.2d 529, 533 (D.C. Cir. 1989) ("In the context of arbitration, . . . on a balance between the interest in rooting out possible error and the interest in assuring that judgment be swift and economical[,] . . . the latter must generally prevail."). And, "a party cannot create an ambiguity by simply pointing to imprecise language or its alternative interpretation of the award—the award must actually be 'susceptible to multiple meanings.'" White Oak Glob. Advisors, LLC, 102 F.4th at 607 (quoting Gen. Re Life Corp. v. Lincoln Nat'l Life Ins. Co., 909 F.3d 544, 549 (2d Cir. 2018)).

Accordingly, in this case, the Court must enforce the ISCID award "as written and[,] if possible, resolve apparent ambiguities by examining the arbitrator's opinion and the record." Id. (quoting Nano Gas Techs., Inc. v. Roe, 31 F.4th 1028, 1031 (7th Cir. 2022)).

### III.   ANALYSIS

The Court will first assess whether it can enforce the petitioner's award by "ensur[ing] that it has subject-matter and personal jurisdiction[] [and] ensur[ing] that the award is authentic[.]" TECO Guat. Holdings, 414 F. Supp. 3d at 101. The Court will then determine whether the defendant's counterpetition should offset any award allotted to the plaintiff by the Annulment Decision in order to "ensure that its enforcement order is consistent with the [Original Cost Decision and the Annulment Decision]." Id.

8

1. **Whether the Court Has Subject-Matter Jurisdiction**

The Foreign Sovereign Immunities Act (the "FSIA"), see 28 U.S.C. § 1605, provides the "sole basis for obtaining jurisdiction over a foreign state" in United States courts, Argentine Republic v. Amerada Hess Shipping Corp., 488 U.S. 428, 428 (1989), and the FSIA's "arbitral award exception" to its general grant of immunity for foreign states, see 28 U.S.C. § 1605(a)(6) (providing an exception for cases brought to "confirm an award made pursuant to . . . an agreement to arbitrate" where the award is "governed by a treaty or other international agreement in force for the United States calling for the recognition and enforcement of arbitral awards"), has been "routinely" applied to ICSID awards, Tidewater Inv. SRL v. Bolivarian Republic of Venezuela ("Tidewater II"), No. 17-cv-1457 (TJK), 2018 WL 6605633, at *4 (D.D.C. Dec. 17, 2018); see Blue Ridge Invs., LLC v. Republic of Argentina, 735 F.3d 72, 85 (2d Cir. 2013) ("To our knowledge, every court to consider whether awards issued pursuant to the ICSID Convention fall within the arbitral award exception to the FSIA has concluded that they do."). Considering this universal application of the "arbitral award exception" to ICSID awards, the Court concludes that it has subject-matter jurisdiction over this matter pursuant to the FSIA.

2. **Whether the Court Has Personal Jurisdiction**

In addition to establishing that the Court has subject-matter jurisdiction, parties seeking to enforce an ICSID award must adhere to the FISA's "meticulous procedure" for establishing the Court's personal jurisdiction over a foreign state, namely by taking specific steps to effect service on the defendant. Tidewater II, 2018 WL 6605633, at *4. Here, however, the defendant does not argue that the Court lacks personal jurisdiction under the FSIA. See generally Def.'s Counterpet. And, in any event, the defendant explicitly agreed to accept service of process and "waive all objections regarding service," including any objections pertaining to personal

jurisdiction. See Joint Mot. ¶¶ 5–6. Therefore, the Court concludes that it has personal jurisdiction over the defendant in this matter.[4]

### 3. Whether the Annulment Decision Is Authentic

Finally, having concluded that the Court has subject-matter jurisdiction over this matter and personal jurisdiction over the defendant, the Court must assess the authenticity of the Annulment Decision before enforcing it. See Koch Mins. Sàrl v. Bolivarian Republic of Venezuela, No. 17-cv-2559 (ZMF), 2021 WL 3662938, at *2 (D.D.C. Aug. 18, 2021). Based on the record before it, the Court concludes that the Annulment Decision is authentic. See Pl.'s Pet., Ex. 1 (Annulment Decision) at 1 (certifying as authentic the copy of the Annulment Decision in favor of the plaintiff). And, as indicated above, the defendant does not contest the authenticity of the annulment decision in favor of the plaintiff; rather, the defendant disputes only the scope of the decision, i.e., whether it applies to Arin Capital. See generally Def.'s Counterpet. Therefore, the Court is compelled to give the ICSID annulment decision and award "the same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several States[,]" 22 U.S.C. § 1650a(a), and enforce the award.[5]

### 4. Whether the Annulment Applies to Arin Capital

The plaintiff having established the requisite elements for enforcing the ICSID award issued in favor of the plaintiff and against the defendant, the Court now turns to whether it must also enforce the defendant's counterpetition. As previously indicated, the defendant contends

---

[4] Because the Court ultimately concludes that there is no viable counterclaim against Arin Capital, it need not assess the plaintiff's claim that the Court lacks personal jurisdiction over Arin Capital in being able to enforce an award against it. See Pl.'s Reply at 12.

[5] Similarly, the Court concludes that the Original Cost Decision is authentic, and, thus, the Court must give it full faith and credit should the Court conclude that it was not annulled by the Annulment Decision. See Def.'s Counterpet., Ex. 1 (Original Cost Decision) at 1 (certifying as authentic the copy of the Original Cost Decision in favor of the defendant).

that the Annulment Decision only applies to the plaintiff and failed to annul any cost award owed by Arin Capital. See Def.'s Counterpet. ¶¶ 45–49. The plaintiff responds that the defendant's "argument that the full amount of the Original Cost Decision still remains outstanding . . . is irreconcilable with the Annulment Committee's unqualified annulment of the Original Cost Decision 'in its entirety[,]'" and therefore, the Court may not enforce the Original Cost Decision. Pl.'s Reply at 3–4. The Court agrees with the plaintiff.

As the defendant acknowledges, the Committee concluded that it was "not in a position to determine for itself what portion of the costs awarded by the Tribunal relate to Mr[.] Khudyan and what part to Arin [Capital,]" Def.'s Counterpet. ¶ 47 (quoting Annulment Decision ¶ 245), and it "therefore could not reduce the total cost award by reducing it in proportion to the portion owed solely by Mr. Khudyan in his personal capacity[,]" id. However, according to the defendant, "[h]aving recognized that the Award debt was joint and several, the only way that the Committee could have annulled the cost award in full would have been to annul the debt of Arin Capital[,]" and because the Committee did not "state so specifically[,]" it must not have done so. Id. ¶ 48.

But the defendant's argument does not comport with the actual language of the Annulment Decision, which makes clear that because the Committee could not determine what portion of the costs awarded relate individually to Mr. Khudyan and Arin Capital, it concluded that it "must annul paragraph 452(5) in its entirety."[6] Annulment Decision ¶¶ 244–45 (emphasis added). Therefore, although the Committee recognized that Mr. Khudyan and Arin Capital were

---

[6] The defendant argues in its reply that "the Annulment Committee annulled the entire Cost Award against Mr. Khudyan[,]" Def.'s Reply at 4 (emphasis added), but that interpretation is at odds with the Annulment Decision's plain text annulling the award paragraph "in its entirety," Annulment Decision ¶ 245, without reference to either of the individual co-claimants.

11

jointly and severally liable for the award in the Original Cost Decision, there was no basis for apportioning the overall award and, thus, the only option was to annul the total award. Also fatal to the defendant's argument is the fact that the Committee did explicitly mention Arin Capital, but only when <u>excluding</u> it from parts of the Annulment Decision.[7] See Annulment Decision ¶ 243 ("The Committee therefore annuls paragraphs 203-267 and 452(1) and, so far as it relates to [the plaintiff] <u>but not in respect of Arin [Capital]</u>, paragraph 452(4) of the Award.") (emphasis added). Because the Annulment Decision was explicit when excluding Arin Capital from other portions of the decision, the Annulment Decision's plain text "that it must annul paragraph 452(5) <u>in its entirety</u>[,]" Annulment Decision ¶ 245 (emphasis added), is best understood as voiding the Original Cost Decision in its entirety as to all parties.[8]

The defendant also points to correspondence from the Secretary-General of the ICSID "remind[ing] all parties of their respective obligations to comply with the Award and Annulment Decision[,]" <u>see id.</u> ¶ 49, a "response [which, according to the defendant,] makes sense only to the extent that Arin Capital (and its alter ego) continue to owe an Award debt[,]" id. However, this correspondence expressly mentions the partial annulment of the award and the order to award fees to the plaintiff, without mentioning any outstanding award to the defendant. See Petitioner Edmond Khudyan's Motion for Entry of Default Judgment, Ex. 3 (Email from Meg

---

[7] The defendant itself acknowledges that "[t]he Annulment Committee could have stated that the Cost Award was annulled against Arin Capital as well . . . but [it] did not do so even though it mentioned Arin Capital in many other places." Def.'s Reply at 3. In doing so, the defendant seems to avoid the obvious conclusion: "[W]hen [ ] [the parties] expressed are members of an 'associated group' . . . , [that] justif[ies] the inference that [the parties] not mentioned were excluded by deliberate choice, not inadvertence." Barnhart v. Peabody Coal Co., 537 U.S. 149, 168 (2003) (quoting United States v. Vonn, 535 U.S. 55, 65 (2002)).

[8] Although the defendant contends that the Annulment Committee could not have annulled the Original Cost Decision as to Arin Capital because it "was not a party to the action[,]" Def.'s Reply at 4, the defendant "cites no authority for this assertion[,]" id. at 1. Further, given the limited role the ICSID framework provides for judicial review of an ICSID award's merits, see Valores Mundiales, S.L., 87 F.4th at 518, the Court sees no basis for disrupting the clear language in the Annulment Committee's decision based on the defendant's argument that the Committee exceeded its authority in annulling the award in full.

Kinnea, Secretary-General of ICSID to H.E. Vahe Houhannisyan, Armenian Minister of Finance (June 28, 2024)) at 2, ECF No. 9-4.  Therefore, contrary to the defendant's position, the letter seems plainly consistent with the express language of the Annulment Decision.

Based on the above findings, the Court concludes that the language of the Annulment Decision is sufficiently clear to enable enforcement.  The Court will not allow the defendant to "create an ambiguity by simply pointing to . . . its alternative interpretation of the award[,]" White Oak Glob. Advisors, 102 F.4th at 607, and the Court does not find that the Annulment Decision is "so ambiguous that [the C]ourt is unable to discern how to enforce it[,]" DEI II, 904 F. Supp. 2d at 133.  Accordingly, the Court concludes that it must deny the defendant's counterpetition to enforce the Original Cost Decision.

## IV.     CONCLUSION

For the foregoing reasons, the Court concludes that it must grant the plaintiff's petition and deny the defendant's counterpetition.  Accordingly, the Court enters judgment in favor of the plaintiff in the principal amount of $438,393.84 plus post-judgment interest at the statutory rate pursuant to 28 U.S.C. § 1961.

**SO ORDERED** this 14th day of July, 2025.[9]

REGGIE B. WALTON
United States District Judge

---

[9] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.